DAVID ILER, RUTH ILER, RUSSELL W. RANKIN, AND BETTY R. RANKIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Iler v. Commissioner
Docket No. 5129-76.
United States Tax Court
T.C. Memo 1978-182; 1978 Tax Ct. Memo LEXIS 336; 37 T.C.M. (CCH) 783; T.C.M. (RIA) 780182; May 16, 1978. Filed James W. Halloran and James J. Cunningham, for the petitioners. Conley G. Wilkerson, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Judge: Respondent determined deficiencies in the Federal income taxes of petitioners as follows: Petitioners
Year
Deficiency
David and Ruth Iler
1972
$43,081.21
Russell W. and
1972
12,933.39
Betty R. Rankin
Petitioners have conceded certain adjustments. The only issue presented for decision is whether Iler Construction Company, a subchapter S corporation of which petitioners were the shareholders, constructively received additional *337 distributable net income during the taxable year 1972 in the amount of $86,069.39 which represented "retainage" on a highway construction contract paid by the Kentucky Department of Highways into an escrow account during that year. The facts of this case were fully stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference and are found accordingly. The pertinent facts are summarized below. The Ilers and the Rankins resided in Naples, Florida, and Cincinnati, Ohio, respectively, at the time the petition was filed in this case. For the taxable year 1972, David and Ruth Iler filed a joint Federal income tax return with the office of the Internal Revenue Service at Memphis, Tennessee. For the same taxable year, Russell W. Rankin and Betty R. Rankin filed a joint Federal income tax return with the office of the Internal Revenue Service at Cincinnati, Ohio. During the entire calendar year 1972 petitioners David Iler and Russell and Betty Rankin were the shareholders of Iler Construction Company (hereinafter referred to as Construction Company), a Kentucky corporation engaged in the general contracting business. Construction *338 Company was an electing small business corporation within the meaning of section 1371, Internal Revenue Code of 1954. [1] The petitioners and Construction Company use the cash receipts and disbursements method of accounting. On or about December 1, 1971, Construction Company was awarded a contract by the Department of Highways of the Commonwealth of Kentucky (hereinafter referred to as Department of Highways), pursuant to which the company undertook to perform certain highway construction work. The contract referred to and incorporated therein by reference the Department of Highways Standard Specifications for Road and Bridge Construction (hereinafter referred to as Standard Specifications). The Standard Specifications provided that monthly progress payments were to be paid by the Department of Highways on the contract price, and that the amount of each partial payment was to be based upon the monthly estimates of the value of the work performed and materials complete in place. For each partial payment, Construction Company was to receive 92.5 percent of the value computed *339 from the monthly estimate due it, less any previous partial payments. The remaining 7.5 percent was to be retained (i.e., "retainage") until payment based on a semifinal estimate for the final quantities was made. The Special Notes Applicable to Project, which were a part of the bid proposal referred to and incorporated in the December 1, 1971, contract, contain a provision which states that retainage authorized under paragraph 1.9.6(a) of the Standard Specifications could be withdrawn by the contractor upon the deposit of securities as authorized by Kentucky Revised Statutes, Section 176.095 (hereinafter referred to as KRS 176.095), and the rules and regulations issued pursuant thereto by the Department of Highways. KRS 176.095, as in effect on December 1, 1971, provides, in essence, that where a percentage of a contract price is retained pursuant to law, the contractor may withdraw all or part of the retained amount upon depositing with a custodian designated by the Department of Highways certain listed United States and Commonwealth of Kentucky governmental obligations, with both a par value and market value on the date of such deposit equal to or greater than the amount of *340 withdrawn retainage. Concurrent with its execution of the contract with the Department of Highways, Construction Company was required by the Department of Highways regulations to execute a document entitled "Contractor's Election as to Retainage" (hereinafter referred to as retainage election). By executing the retainage election, Construction Company was required to select one of three methods for treatment of the retainage funds. The first alternative was to deposit qualified securities with a custodian in order to withdraw the retainage. The second alternative was to elect to have a custodian purchase securities with the retainage funds for the contractor's account. The third alternative was to elect not to withdraw the retainage until otherwise due under the Standard Specifications. Construction Company elected the second alternative. The company's election document was incorporated into and became a part of the contract between the Department of Highways and Construction Company in accordance with the Department of Highways regulations. Pursuant to the company's election to have a custodian purchase securities for its account, Peoples Liberty Bank (hereinafter referred *341 to as the Bank) in Covington, Kentucky, was designated and approved as the custodian. On November 1, 1971, the Bank and Construction Company executed a document entitled "Escrow Agreement" which was approved for the Department of Highways by the Executive Director, Office of Fiscal Management. Under the preamble to the Escrow Agreement, the Department of Highways was to deliver checks payable to the Bank for Construction Company's account. Such checks would be deposited and held by the Bank in accordance with the provisions of the Escrow Agreement. The Escrow Agreement provided that the Bank, upon receipt of the checks from the Department of Highways, was to purchase for the company's account certain listed United States or Kentucky governmental securities. [2] The amount of securities to be purchased by the Bank was to be determined by the lesser of market or par values of the obligations and the amount of the checks received from the Department of Highways. *342 Under the Escrow Agreement, the Department of Highways was absolutely entitled to demand the return of and receive the retainage plus interest, if any were earned after demand, if it, and it alone, determined that Construction Company was in default on the performance of its contract. Such entitlement would in no way be affected by a claim or assertion from Construction Company to the Bank disputing the Department of Highways' determination of default. According to the Escrow Agreement, the Bank would be released from its liability to the Department of Highways for the return of the retainage upon notification by the Department of Highways of the final acceptance of the project and of Construction Company's performance under the contract. During the taxable year 1972 the Bank received $86,071.98 from the Department of Highways under the terms of the Escrow Agreement. Such funds were received in the form of checks made payable to the Bank. The checks contained references to both Construction Company and the project number, which were sufficient for the Bank to identify the Escrow Account under the terms of which the funds were to be held. Taking into consideration the total *343 receipts by the Bank for the company's account in the calendar year 1972 and the payment of escrow fees in the amount of $162.79 by the company during that year, the Bank received and held in escrow during 1972 net funds in the amount of $86,069.39. The Bank did not release any securities or any funds from the escrow account at any time during 1972. It was customary for the Bank to consult with Construction Company in respect of the securities to be purchased with the escrowed funds. However, in investing the funds held for Construction Company's account under the terms of the Escrow Agreement, the Bank never purchased registered securities which required a certificate or document to be issued as evidence of ownership. In all instances the Bank purchased short-term United States Treasury obligations with the escrowed funds, and such purchases were evidenced only by bookkeeping entries on the books and records of the Bank and the Federal Reserve Bank through which the securities were purchased. On their 1972 joint Federal income tax returns, the Ilers and the Rankins reported income from Construction Company in the respective amounts of $75,997.28 and $25,332.41. Such amounts *344 represented the allocable portions of the company's 1972 reported net distributable income of $101,329.69 to which each was entitled. Respondent determined that the "retainage" in the amount of $86,069.39 paid into escrow during 1972 should have been included in Construction Company's net distributable income for 1972 and adjusted its income accordingly. Respondent also adjusted petitioners' income to reflect their allocable portions of the increase in the small business corporation's net distributable income. In general, cash basis taxpayers are required to include amounts in gross income for the taxable year during which such amounts are received. [3] Where, as here, an item of income has not been actually reduced to the possession of the taxpayer during the taxable year, it is only includable in gross income if it is constructively received by the taxpayer during such year. [4]
*345 Income is constructively received during a taxable year if its receipt by the taxpayer is not subject to substantial limitations or restrictions. The income must be unqualifiedly subject to the demands of the taxpayer. Johnston v. Commissioner,14 T.C. 560 (1950). In this case Construction Company elected at the time of executing its contract with the Department of Highways to have the retainage paid into an escrow account with the Bank. The Bank was to utilize the retained funds to purchase, for Construction Company's account, certain enumerated low-risk Federal and Commonwealth of Kentucky securities. Construction Company consulted with the Bank as to which securities, within a narrow range of choices, would be purchased with the retainage funds. However, Construction Company was not entitled to receive the retainage amounts until it had completed the construction in accordance with the contract, and until its work was approved by the Department of Highways. Moreover, the Department of Highways possessed the unilateral and unconditional rights to declare the company's *346 work to be in default at any time prior to final approval and to demand the return of and receive the retainage plus interest from the Bank. It has been held that escrowed funds are not taken into income until such funds are paid over to the taxpayer. Johnston v. Commissioner,supra;Commissioner v. Cleveland Trinidad Paving Co.,62 F. 2d 85 (6th Cir. 1932), affg. 20 B.T.A. 772 (1930). However, we need not rest our conclusion that Construction Company did not constructively receive the amount of "retainage" in 1972 solely upon the fact that such funds were paid into and held in escrow during 1972. The substantial conditions placed upon its entitlement to the retainage funds under the Escrow Agreement rendered questionable even the eventual receipt of such funds by Construction Company, and certainly preclude a finding that such funds were constructively received by it during 1972. Construction Company did possess certain powers with respect to the investment and receipt of income from the retainage funds. However, we regard such *347 powers as inconsequential in view of the substantial conditions imposed upon the company's receipt of such "retainage" and in view of the restricted list of low-risk governmental obligations which could be purchased with the retainage funds. Such powers did not permit Construction Company to exercise unfettered or even substantial control over the disposition and utilization of the retainage funds. Accordingly, we find and hold on this record that Construction Company did not constructively receive additional distributable net income during the taxable year 1972 in the amount of the retainage on the highway construction contract paid by the Department of Highways into the escrow account during that year. Consequently, petitioners received no additional income during 1972 from their small business corporation based on the amount of such retainage. To reflect petitioners' concessions and our conclusion with respect to the disputed issue, Decisions will be entered under Rule 155. Footnotes
1. All Code references are to the Internal Revenue Code of 1954, as amended.↩
2. The securities which could be purchased with the escrowed funds were restricted to: U.S. Treasury Bonds; U.S. Treasury Notes; U.S. Treasury Certificates of Indebtedness; U.S. Treasury Bills: Bonds of the Commonwealth of Kentucky; and Bonds in any political subdivision of the Commonwealth of Kentucky, including school districts.↩
3. SEC. 451. GENERAL RULE FOR TAXABLE YEAR OF INCLUSION. (a) General Rule.--The amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period. SEC. 1.451-1. [Income Tax Regs.] General rule for taxable year of inclusion. (a) General rule. Gains, profits, and income are to be included in gross income for the taxable year in which they are actually or constructively received by the taxpayer unless includible for a different year in accordance with the taxpayer's method of accounting. *** Under the cash receipts and disbursements method of accounting, such an amount is includible in gross income when actually or constructively received. *** ↩
4. SEC. 1.451-2. [Income Tax Regs.] Constructive receipt of income. (a) General rule. Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions.***↩